# NO. 12-08-00067-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | § | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | § | *COUNTY COURT AT LAW* |
| *PROTECTION OF R.M.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

R.M. appeals from an order of commitment for temporary inpatient mental health treatment. After a hearing without a jury, the trial court ordered R.M. committed to Rusk State Hospital for a period not to exceed ninety days. In one issue, R.M. asserts the evidence is legally and factually insufficient to support the order of commitment. We affirm.

### BACKGROUND

On January 18, 2008, an application for court ordered temporary mental health services was filed requesting the court commit R.M. to Rusk State Hospital for a period not to exceed ninety days. The application was supported by a certificate of medical examination for mental illness, prepared by a physician, Dr. Gary Paul Kula, who examined R.M. on January 17, 2008. Dr. Kula diagnosed R.M. as suffering from Bipolar I, manic with psychosis. He found that R.M. is mentally ill, likely to cause serious harm to others, and is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether to submit to treatment.

Dr. Kula reached these conclusions because R.M. said he is Bipolar and is a Texas Ranger, and wants to apply for the superintendent's job at Rusk State Hospital. Further, from January 15 to January 17, R.M. smoked marijuana, was off his medication, and was manic psychotic, agitated, and aggressive with the staff of a hospital. For these same reasons, Dr. Kula determined that R.M. presents a substantial risk of serious harm to himself or others if not immediately restrained.

On January 18, 2008, R.M. was examined by Dr. Larry Hawkins who then also prepared a certificate of medical examination for mental illness. Dr. Hawkins diagnosed R.M. with Bipolar Disorder I, manic with psychosis. He indicated that R.M. is mentally ill, is likely to cause serious harm to others, is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether to submit to treatment. The doctor came to these conclusions because R.M. said he is in the military, is a Texas Ranger, and was appointed by Governor Bush to be superintendent of Rusk State Hospital. Further, on January 17, R.M. was verbally aggressive toward his brother and argued with police officers.

Dr. Hawkins testified at the trial, first restating his diagnosis that R.M. has a mental illness, Bipolar I, manic with psychosis. He explained that his determination that R.M. is likely to cause serious harm to others and that he cannot provide for his basic needs is based on a continuing pattern of behavior although, the night before the trial, R.M. was extremely agitated and aggressive toward staff, requiring emergency medication. The doctor referred to that behavior as an overt act. He explained that R.M. was extremely pressured, very delusional, making irrational comments constantly. The doctor testified that R.M. would be unable to get his needs met in the community because of his inability to communicate in an appropriate fashion with others. Due to the way he talks to people, they would assume he was threatening them. He was verbally aggressive toward his brother and the police when they tried to talk with him. That pattern of behavior, Dr. Hawkins testified, continued at the hospital. He was quite delusional, very forceful in his verbal arguments, and constantly made irrational comments. R.M. said he was in the military, he was a Texas Ranger, and that he had been appointed to be superintendent of the hospital by Governor Bush. Also, he transposed cities and places here to other states. R.M. was taking medications while in the hospital, but he had not shown a response adequate enough to be out of the hospital. Dr. Hawkins averred that

R.M. needed to be in the hospital so staff could observe his demeanor as he takes his medication. Therefore, Rusk State Hospital was the least restrictive environment for him.

On cross examination, Dr. Hawkins explained that R.M. would not be able to participate in outpatient treatment "because his agitation, with his delusions and with the thoughts he is having is so labile and so up and down constantly, that he would be perceived as a threat to others in the community, the way he presents himself." The doctor hoped R.M. might be able to leave the hospital in two to three weeks, although he was not really showing signs of improvement. He explained that, because R.M. got so agitated about the topic of court, they were unable to discuss his medications with him.

R.M. testified, explaining that he was a disabled veteran of Desert Storm and wanted to return to the Veteran's Administration outpatient clinic. He explained that the previous night's incident was merely his response to the man in the room adjoining his. That man was "causing quite a headache" and threatened to do physical bodily harm to R.M. R.M. "was just hollering back at him, and the staff got prideful" and medicated him. He denied trying to harm the other patient, although he admitted having other confrontations since he arrived at the hospital. If released he would return to his home where he lives alone. He said he is retired so he does not work, but he would attend an outpatient community health program in Longview and would take his medication. He explained that he stopped taking his medication because it was being "lifted out of the mail box." He had to "make a change of address to [his] parents' address."

On cross examination, R.M. stated that his disability is Bipolar I and he has about fifty percent hearing loss. He gets a V.A. check and disability check for being Bipolar I. He explained that he called himself a Texas Ranger because he graduated from Kilgore College in 1983, where the mascot is the Ranger. He said he is not in law enforcement. He denied ever saying that he had been appointed superintendent of Rusk State Hospital.

The trial court found R.M. to be mentally ill and found that, as a result of mental illness, he is likely to cause serious harm to others, is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether to submit to treatment. The court entered an order requiring R.M. to submit to temporary inpatient mental health

services in Rusk State Hospital for a period not to exceed ninety days.

**COMMITMENT ORDER**

In his sole issue, R.M. asserts the evidence is legally and factually insufficient to support the commitment order. He contends that there is no evidence supporting the finding that he is likely to cause serious harm to others and asserts that the State failed to establish that his ability to function would continue to deteriorate if not treated. Further, he contends the State did not prove an overt act or continuing pattern of behavior to confirm his distress and the deterioration of his ability to function.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, the reviewing court must consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In addressing a factual sufficiency of the evidence challenge, we must consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *In re C.H.*, 89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 25. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* We must consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. *In re C.H.*, 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See id.* at 27.

**Applicable Law**

The trial judge may order a proposed patient to receive court ordered temporary inpatient

4

mental health services if the judge or jury finds, from clear and convincing evidence, that the proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (Vernon 2003).

**Discussion**

The State provided expert testimony explaining that R.M. is mentally ill and describing his behavior and statements. When off his medication, he is delusional, agitated, and verbally aggressive. Dr. Hawkins described an overt act occurring the night before the hearing when R.M. became so agitated and aggressive that emergency medication was necessary. R.M. is irrational and unable to communicate appropriately. This testimony of an overt act, as well as R.M.'s mental state, tends to confirm that R.M. is suffering severe and abnormal mental, emotional, or physical distress. Dr. Hawkins specifically testified that, because of his inability to communicate appropriately, R.M. would not be able to have his needs met in the community. Further, the doctor stated that R.M. would be unable to participate in outpatient treatment. Thus, R.M. is experiencing deterioration of his ability to function independently and unable to make a rational decision about whether to submit to treatment. Considering all the evidence in the light most favorable to the finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that this finding was true. *See In re J.F.C.*, 96 S.W.3d at 266. This evidence satisfies the statutory requirement for clear and convincing evidence in support of the order for temporary inpatient mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a). The evidence is legally sufficient to support the trial court's order. *See J.F.C.*, 96 S.W.3d at 266.

5

In addressing R.M.'s factual sufficiency complaint, we consider the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. R.M. said he lives alone and would obtain outpatient services and take his medication. He explained why he called himself a Texas Ranger and denied having made one of the delusional statements attributed to him. The trial court was entitled to disbelieve R.M.'s testimony and disregard evidence contrary to the State's position. *See id.* at 27. Further, R.M.'s testimony does not negate the evidence that he is unable to have his needs met in the community. In light of the entire record, we cannot say that the trial court could not reasonably form a firm belief or conviction that R.M. is distressed and that his ability to function has deteriorated, thereby requiring further inpatient mental health services. *See id.* Thus, the evidence is factually sufficient to support the trial court's findings. We overrule R.M.'s sole issue.

### DISPOSITION

Because the evidence is legally and factually sufficient, we ***affirm*** the trial court's order for temporary inpatient mental health services.

  JAMES T. WORTHEN  
Chief Justice

Opinion delivered September 3, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)